Knowlton *v.* Sanford.

---

KNOWLTON & al. versus SANFORD & al.

If, in a river, there be a common and known passage way for vessels to a wharf, there is, *ordinarily* no right in any person to obstruct it by anchoring a vessel upon it, or so near to it as to expose another vessel to danger, by compelling her to depart from the passage way.

In case of *absolute necessity*, however, a vessel may lawfully anchor upon such passage way, remaining no longer than the necessity exists.

Knowlton *v.* Sanford.

In any such case of necessity, it is the master's duty to exercise reasonable skill, prudence and care to give all others their just rights of navigating the river. Whether he performs that duty, is a question of *fact* for the jury.

Though the distress of the vessel were *not* so stringent as that she *could* not have been stopped and anchored elsewhere than in the passage way, it is still matter, not of law for the court, but of fact for the jury, to determine whether the master, *under the circumstances*, performed his duty to others in occupying the passage way.

Even if, *without necessity*, a vessel should have anchored in such passage way, *that* would not authorize neglect in any other vessel, attempting to pass upon such passage way. Such other vessel is bound to the use of ordinary care and skill, though the first vessel was in the wrong. If, through want of such care and skill, on the part of the vessel attempting to pass, a collision should occur, her owners would be liable to the owners or shippers of the anchored vessel, for their damages.

Where a steamer, by user, has acquired the right to pass upon a particular passage way to a wharf, it is for the jury to decide whether other navigators are bound, *under the circumstances*, to know that there *is* such a passage way, and *where* it is.

CASE. The plaintiffs shipped goods on board the schooner Brandywine, bound from Boston to Bangor. When arrived in the Penobscot river, the schooner anchored, one evening, in Bucksport eddy. While there at anchor, the next morning, she was run into and sunk by the steamer Penobscot, owned by the defendants. To recover for the damage thereby done to the plaintiffs' goods, this action is brought. In relation to the extent of the damage, the parties submitted to the decision of referees, stipulating, however, that the submission should have no influence upon the question of the right of action. The referees estimated the plaintiff's damage at $779,13. At the trial, evidence was offered with a view to show, *that* the defendants had, from the year 1836, owned and occupied a wharf in Bucksport, for a steamboat landing ; *that* they had for all that period, been accustomed to pass to their wharf in a particular course or passage way, and had the right, whenever their occasion should require it, to pass along that passage, unimpeded by vessels at anchor there ; *that* the schooner was lying in that passage way ; *that* so soon as she was discovered to be there, the officers and crew of the steamer used all due efforts, though unsuccessfully, to avoid

the collision; *that* the collision occurred without any fault on their part, but wholly by the fault of the officers and crew of the schooner; *that,* on the part of the officers and crew of the schooner, there was a want of skill and care by which the collision was produced.

On the other hand, evidence was offered to show, *that* by reason of adverse winds, and through injuries sustained by the schooner, in her sails and rigging, her officers and crew had lost the control of her; *that* only one sail was in any condition to be used, and that was much torn; *that* they could not proceed with her up the river, but were compelled to anchor at that spot for repair; *that* the steamer seasonably discovered her position, and might easily have avoided the collision; *that* the injury was occasioned wholly through the want of skill, care and prudence of the officers of the steamer; and *that* the officers and crew of the schooner used all requisite skill, diligence and care.

With a view to affect the question of damages, some evidence was offered, as to the character and soundness of the schooner, and as to the conduct of the master and others after the collision.

The jury were instructed *that* all vessels, when navigating our rivers, have common and equal rights; —

*that* every person is bound so to use this right as not to infringe the rights of others; —

*that,* if there is a common and known channel in the river, or a common and known passage way to a wharf, no person ordinarily has a right to occupy it by anchoring his vessel upon it, or so near to it as to compel another vessel to encounter danger by departing from it; —

*that,* however, in case of *absolute necessity,* a vessel may lawfully anchor there and remain there so long as the necessity exists, and no longer; —

*that,* if the schooner had met misfortune, and the master could not use another sail, (than the one impaired,) and could not go to a safe place to anchor, then he would be justified in anchoring, and be entitled to remain as long as that necessity was upon him, and no longer; —

Knowlton *v.* Sanford.

*that*, in such case, however, it was the master's duty to exercise reasonable skill, prudence and care to give others their just rights of navigation, and whether he performed that duty was a question, not of *law* for the *court*, but of *fact* for the *jury;*

*that*, if he could have stopped and anchored elsewhere, it was still for the jury to consider whether he performed his duty or not; —

*that*, if the place of the schooner's anchorage was in the common passage way of the steamboat since 1836, as contended by the defendants, the jury should determine whether navigators should be held to know that there was such passage way, and where it was; —

*that*, if there was *no* necessity for anchoring there, or if the schooner remained longer than she should have done, *that* would not authorize neglect on the part of the steamer; *that* she would be bound to use ordinary care and skill, even if the master of the schooner was in the wrong; and *that*, if the collision happened through the want of such care and skill, on the part of the steamer, the defendants are liable; —

*that*, (on the question of damages,) the character and soundness of the schooner and what took place in the conduct of the master and crew *after the collision*, it was unnecessary for the jury to consider, as the amount had been adjusted by referees on that point.

The trial was before SHEPLEY, C. J. The verdict was for the plaintiff; and the defendants excepted to the instructions given to the jury.

*J. Appleton*, for the defendants.

1. The Brandywine had no right to anchor across the known track of the steamer, unless from absolute necessity.

" The party, who sets up necessity as an excuse for a violation of the statute, must make out the *vis major* under which he shelters himself, so as to leave no reasonable doubt of his innocence." *Brig Struggle* v. *U. S.*, 7 Cranch, 22.

" The necessity, which will excuse a violation of a law of trade, must be such as will produce a *well grounded appre-*

*hension* of the loss of *vessel, cargo or crew* on the mind of a skilful mariner." *New York*, 3 Wheat. 59.

Now whether it be a law of trade or a *law of way*, or the legal rights of passage, it matters not, the necessity, in *all* cases, which will justify a violation of the law of the State and the legal rights of others, must be a case of *stern, stringent* and pressing necessity. *The Scioto*, Daveis' R.; *Strout* v. *Foster*, 1 Pet. U. S. Rep. 89.

As a matter of *law* or *fact* the plaintiffs were under no inevitable, unavoidable, urgent necessity of stopping in the track of the steamer, and thus of obstructing the right of navigation.

It is not the abstract necessity of stopping — but of stopping in a *particular place.*

The jury were instructed, that it ,was for them to determine if the schooner was conducted *with a reasonable degree of care* to give others a fair use of navigation.

The position of the schooner, is in no respect a question of care, *or of degree of care,* but of *necessity* and of that alone.

Reference by the court to *care* or *degrees* of care, served to distract the jury from the real issue before them.

Another instruction to the jury was, that if the place of' the schooner's anchorage was in the *common track* of the steamboat since 1836, it was *for them to determine* whether navigators should *not* know it.

Whether or *not* this was the common track of the steamboat is a *matter of fact,* and for the jury.

Whether or not navigators *were bound* to know it, if it had existed so long, is a question of *law,* and *for the court.*

If the track of the steamer has been uniform since 1836, then, as *matter of law,* navigators *were* or *were not* bound to know that fact.

But by their verdict, the jury must have decided that navigators *were not* bound to know it; *then,* unless this be the law, we are entitled to a new trial.

A most material question of law is submitted in the alternative to the jury, and they have decided that the navigators

are *not* bound to know the *track* of a steamboat, though it may be of fourteen years continuance.

Another instruction was that, if the schooner met with misfortune, and the master could not use another sail, and *could not* go to a *safe* place to anchor, *then* he would be justified in anchoring, and would be entitled to remain *as long* as that necessity was upon him and *no* longer.   ·

This instruction was utterly disregarded by the jury.   The evidence on the part of plaintiffs most completely and conclusively negatives such necessity.

The jury were instructed that, if the master of the schooner could *have stopped and anchored elsewhere*, it was for them to consider *whether* he has performed *his duty or not.*

This is erroneous.

It is for the jury to determine "if he could have stopped and anchored elsewhere ;" if he could, *then* the law applies itself to that state of facts, and fixes *the duty of the master.*

The court do not determine what the duty of the master is, but submit it to the jury.

Suppose the jury found the *fact* to be, "that he might have stopped and anchored elsewhere," and that as matter of *law*, it was *not* his duty so to do ; it is obvious that while right, as to the fact, they are *wrong* as to the law.

The law in the *alternative* was submitted to them, and the verdict shows it to have been erroneously settled by them.

Another instruction was that, even if the schooner was under no necessity of anchoring where she did, or if she remained longer there than she should have done, that would not authorize neglect on the part of the steamer.   She would be bound to use ordinary care and skill, even if the master of the schooner was in the wrong ; and if the collision happened through the want of such care and skill on the part of the steamer, the defendants are liable.

By this instruction, it is immaterial whether the plaintiff is in the *right* or *wrong*, is · guilty of the grossest negligence, or has used ordinary care.   The same care, skill and prudence

are required of the defendants, *irrespective* of the misconduct and negligence of the plaintiff.

If this be the law, the plaintiff is relieved from proving ordinary care. He may be as negligent as he chooses, and thus, by *his own misconduct*, impose new and onerous duties upon the defendant, and by throwing them on the defendant, he may *relieve* himself from the obligations which the law imposes upon him. *Rathburn* v. *Paine*, 19 Wend. 401.

The true rule is, that to authorize a recovery, proof of ordinary care should be required, from the *plaintiff*. Here the Judge erroneously required that proof from the *defendants*.

*Kelley*, for the plaintiffs.

HOWARD, J. — The plaintiffs shipped a quantity of goods, at Boston, on board the schooner Brandywine, to be delivered at Hampden, on the Penobscot river. While the schooner lay at anchor in the harbor and bay of Bucksport, on the river, the steamer Penobscot came into collision with her, producing a breach in her side, and causing her to sink, with all her cargo on board, in fifteen or twenty minutes. The schooner and cargo were afterward raised, and the plaintiffs, and other owners of the cargo, submitted, in writing, the question of damages to the appraisal of three men, mutually selected by themselves and the owners of the steamer ; " each party protesting that it does not hereby compromise any legal rights ; and the owners of said steamer protesting that they do not hereby admit themselves in any way to be liable for said damage, or for said collision. All parties are to be bound by the decision of the appraisers aforesaid, as to the amount of the damage." The damages sustained by the plaintiffs' goods were appraised at $779,13.

This presents a case of collision, in which damages are claimed by the shipper and owner of goods, on board the schooner, as resulting from the negligence of the defendants, as owners and managers of the steamer.

To the instructions given to the jury by the presiding Judge, as to the burden of proof, — the rights of vessels afloat, and passing on navigable waters, and the respective du-

Knowlton *v.* Sanford.

ties of those managing them, so to use their own as not to impair the rights of others, — and the general right of a vessel to anchor in a passage way for vessels, only in cases of necessity, and then, no longer than the necessity required, the exceptions have not been presented in the argument.

The jury were instructed that they might determine from the evidence, " if the schooner was conducting with a reasonable degree of care to give others fair use of navigation ;" and it appearing that she was anchored at the time of the accident, nearly, if not precisely in the line or track of the steamer, they were further instructed that they might determine in like manner, whether, if this was the common track of the steamboat since 1836, as contended by the defendants, navigators should not know it. " If so, then for a vessel to place herself at anchor across the steamer's track, would be to exercise a right to which she was not entitled, if she might find other places of safety for anchorage. If the schooner met with misfortune, and the master could not use another sail, (than the one impaired,) and could not go to a safe place to anchor, then he would be justified in anchoring, and be entitled to remain as long as that necessity was upon him, and no longer. If he could have stopped and anchored elsewhere, it is for you to consider whether he has performed his duty, or not."

To these instructions, exceptions were taken, and are pressed in the argument for the defendants. (1.) Because the position of the schooner was not a question of care, or degree of care, but of necessity alone. (2.) Whether that was the common track of the steamer since 1836, was a question of fact for the jury, but whether navigators should have known it, was a matter of law, and improperly submitted to the jury. (3.) If the master of the schooner could have stopped and anchored elsewhere, the law applies itself to the state of facts and fixes his duty.

Though the master of the schooner might have been impelled by necessity to anchor in the passage way of vessels to the wharf, or where anchoring would not be justifiable, ex-

cepting under stress of circumstances, controling the ordinary rights and duties of navigators, yet he would be required, even under those circumstances, to exercise at least a reasonable degree of care and skill in taking and occupying such position. Not even necessity would justify a reckless disregard of the rights of others. Whether the conduct of the master was such as was required, in conformity with these principles, was a matter for the jury, and properly submitted to them. And whether navigators would know, or be required to know, the track of the steamer, would depend upon the facts proved to the satisfaction of the jury. Not only whether it had been used by the steamer, since 1836, but in what manner it had been used, in what seasons of the year, and how often, and whether or not it was varied by the season, wind, current, or tide. These were facts for the consideration of the jury. The instructions in this respect, we apprehend, are sufficiently stringent upon the master of the schooner. For they do not admit of his justification for anchoring and remaining in the track of the steamer, whether he knew it or not, unless from necessity, resulting from misfortune, and not from carelessness. Taken together they hold him to strict rules of care and skill even in his necessities. Of this the defendants have no cause for complaint.

If the master of the schooner could have anchored elsewhere, the law would not absolutely and imperiously require him to do so, if, in the exercise of reasonable care and skill, prudent and skilful navigators upon those waters would have deemed it hazardous and unsafe to do it. The line of duty, in this respect, cannot be pressed to the verge of possibilities. The inquiry would not be, what the master *could* have done, but what, in the exercise of reasonable care and skill, he should have done, under the circumstances. On this point, therefore, the instructions were not exceptionable.

The next instructions were that, "if there was no necessity for anchoring there, or if the schooner remained longer than she should have done, that would not authorize neglect on the part of the Penobscot. She would be bound to use

ordinary care and skill, even if the master of the schooner was in the wrong." The attention of the jury was then called to the evidence, and they were directed to determine thereby, whether "the master of the Penobscot was in the exercise of ordinary care and skill," or whether "the accident was the result of the course she was compelled to take, by reason of the vessel lying in her course. The question then returns, was there want of skill and care on the part of the master of the Penobscot, or was it the result of accident, considering the course she was compelled to pursue, from the position of the schooner; if the former, the defendants are liable, if the latter they are not. If the accident was the result of fault on the part of both, then the plaintiff is not entitled to recover."

It is a general principle of maritime law, that a vessel under sail must avoid one at anchor; so one that can command her movements must give way to one that is not under control. A vessel propelled by steam, is considered, in the application of this principle, as under sail, and with the wind at all times, and must give place accordingly. *The Shannon,* 2 Hagg. 173 ; *Luxford* v. *Large,* 5 Carr. & Payne, 421.

If a collision of vessels takes place by the fault of one of the vessels, without any fault of the other, or if the fault of the latter did not contribute to the injury, the former is responsible for all the damages. *The Ligo,* 2 Hagg. 356 ; *The Thomas,* 5 Robinson, 345 ; *Vanderplank* v. *Miller,* Moody & Malk. 169 ; *Sills* v. *Brown,* 9 Carr. & Payne, 613 ; *The Scioto,* Daveis' R. 359, (U. S. Dist. Court, Maine, Ware, J.)

If the collision happened by accident, and without any fault on the part of either vessel ; or if it do not appear which is in fault, or if both were in fault, and contributing to the injury, the misfortune must be borne by those on whom it falls, and damages are not recoverable by either party, at common law. But in admiralty, if the collision were occasioned by a want of care or skill on both sides, the loss would be apportioned, or divided equally between them, as having been produced by the fault of both. *The Wood-*

*rop Sims,* 2 Dods. 83; Abbott on Shipping, 302, (5th Amer. ed.); 3 Kent's Com. 230, 231; Story on Bailments, § 609 and notes.

As in cases of collision of carriages on land, so of vessels on water, the party who sues for damages occasioned by the collision, in order to support his action, must prove that the defendant was in fault, and that there was no want of ordinary care which contributed to the injury on the part of the plaintiff. The fault of one will not justify the fault of the other. Each must exercise, at least, ordinary care and skill for himself:— *Imperitia culpae enumerantur.* Owners of vessels, are responsible for the negligence and want of skill of masters, while acting within the sphere of their employment. The instructions were in accordance with these principles, and could not, we think, have been misunderstood by the jury.

On the subject of damages the jury were informed that, "as to what took place after the collision, and as to the conduct of the master, and as to the soundness of the vessel, you may lay that all aside, as having nothing to do with the case. The rights of the parties depend upon what took place before and at the time of the collision, and not after." To this the defendants except, as misleading the jury on the question of damages.

While it is true that the subsequent conduct of the party injured, and the condition of the damaged vessel, might not contribute to the occurrence of the accident, yet they might materially affect the amount of damages. A party injured in his character, person or property, cannot, by his own misconduct, or negligence, enhance the damages for which he claims compensation from another. But in this case, the *amount* of damages had previously been determined by the appraisers, selected by the parties, and the question of amount, did not properly arise at the trial. These instructions were therefore correct.

From a careful examination of the testimony reported, we cannot say, that the jury have erred in their conclusion.

There was evidence from which they might properly determine, that the injury was occasioned without any fault of the plaintiffs or their agents, and that it was caused by the want of ordinary care and skill of the defendants. Though, in some respects, the testimony was conflicting, yet it was submitted to the jury under proper instructions, and in our opinion, their verdict is neither against the evidence, nor the weight of evidence.　　　　　　　*Exceptions overruled.*